**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAROCHELL BEAUTY, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>BEAMING WHITE, LLC, *et al.*,<br><br>        Defendants. | Civil Action No. 22-5398 (MAS) (JBD)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

    This matter comes before the Court upon Counterclaim Defendants LaRochell Beauty, LLC ("LaRochell"), Ayman A. Khourshed ("Khourshed"), and Sally I. Alkamary's ("Alkamary," and collectively with LaRochell and Khourshed, "Counterclaim Defendants") Motion to Dismiss (ECF No. 110) the Amended Counterclaims of Counterclaim Plaintiff Beaming White, LLC ("Beaming White") (ECF No. 103). After careful consideration of the parties' submissions, the Court decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b)[1] and Local Civil Rule 78.1(b). For the reasons set forth below, the Court grants in part and denies in part Counterclaim Defendants' Motion to Dismiss.

---

[1] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

## I. BACKGROUND[2]

### A. Factual Background

This action arises out of allegations of trademark infringement, unfair competition, and violations of the Lanham Act. (*See* Am. Compl., ECF No. 19.) LaRochell operates a business that markets and sells oral care products, including toothbrushes and electric toothbrushes, under the trademark PEARLY. (*Id.* ¶¶ 13, 15.) LaRochell owns U.S. Trademark Registration Nos. 6,232,120 (the "'120 Registration") and 6,359,658 (the "'658 Registration"), both for the mark PEARLY. (Am. Compl. ¶ 13; Am. Countercls. ¶ 12, ECF No. 103.) Both registrations were filed under Section 1(a) of the Lanham Act based on actual use in commerce. (Am. Countercls. ¶¶ 13, 35.)

Beaming White sells electric toothbrushes under the name "Pearly." (Am. Compl. ¶ 21; Answer ¶¶ 31-32, ECF No. 28.) On November 2, 2020, Beaming White filed a federal trademark application for the mark "Pearly," which the United States Patent and Trademark Office (the "USPTO") refused due to a likelihood of confusion with LaRochell's mark in the '120 Registration. (Am. Compl. ¶ 29; Answer ¶ 29.) LaRochell alleges that despite this refusal, Beaming White "continued to sell directly competing [products] bearing the [i]nfringing [m]ark." (Am. Compl. ¶ 30.)

In March 2022, counsel for LaRochell sent Beaming White a cease-and-desist letter, objecting to Beaming White's sale of toothbrushes under the name Pearly (the "Accused Products"). (Am. Compl. ¶ 31; Answer ¶ 31.) Beaming White agreed to cease selling the Accused Products after a sell-off period. (Am. Compl. ¶ 32; Answer ¶ 32.) LaRochell alleges that Beaming White nevertheless "belied" its representations to cease sales, did not respond to correspondence

---

[2] For the purposes of considering the instant motion to dismiss, the Court accepts all factual allegations underlying the Amended Counterclaims as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

for "extended periods," attempted to lengthen the sell-off period, and entered into consignment sales agreements with Defendants Boxy Charm, Inc. and FabFitFun, Inc. (collectively, the "Retailer Defendants"). (Am. Compl. ¶¶ 32-34.)

LaRochell commenced this action against Beaming White on September 2, 2022, asserting claims for trademark infringement and unfair competition based on both its federal registrations and common-law rights. (*See* Compl., ECF No. 1.) On November 28, 2022, LaRochell filed an Amended Complaint, asserting the same claims and adding the Retailer Defendants.[3] (*See generally* Am. Compl.) None of the Defendants moved to dismiss LaRochell's claims. (Answer ¶ 1; Boxy Charm Answer ¶ 1, ECF No. 32; FabFitFun Answer ¶ 1, ECF No. 34.)

While discovery was ongoing, Beaming White sought leave to file amended counterclaims against LaRochell (ECF No. 100), which the Court granted (ECF No. 102). Beaming White asserts three counterclaims: (1) cancellation of the '120 Registration ("Counterclaim One"); (2) cancellation of the '658 Registration ("Counterclaim Two"); and (3) tortious interference with prospective economic advantage ("Counterclaim Three"). (*See* Am. Countercls.) For the tortious interference counterclaim, Beaming White names Alkamary and Khourshed as individual counterclaim defendants, and seeks to hold them personally liable by piercing the corporate veil. (*Id.* ¶ 110; *see* Countercl. Pl.'s Opp'n Br. 15-19, ECF No. 112.) Counterclaim Defendants move to dismiss Beaming White's counterclaims for failure to state a claim. (ECF No. 110.) That motion is ripe for adjudication.

---

[3] LaRochell also sought to add Luis Lajous as a defendant to this action. (*See* Am. Compl.) Lajous moved to dismiss the Amended Complaint (ECF No. 29), which the Court granted, finding that it lacked personal jurisdiction over him (ECF No. 41).

## II. <u>LEGAL STANDARD</u>

Courts evaluate a motion to dismiss a counterclaim under the same standard as a motion to dismiss a complaint. *See, e.g.*, *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011). A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state that the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III. DISCUSSION

The Court considers Beaming White's counterclaims in turn.

### A.   Cancellation of the '120 and '658 Registrations (Counterclaims One and Two)

Beaming White seeks cancellation of LaRochell's PEARLY trademarks on the grounds that the marks were fraudulently obtained. (Am. Countercls. ¶¶ 77-92; *see* Countercl. Defs.' Moving Br. 8-13, ECF No. 110-1.)

Section 37 of the Lanham Act authorizes district courts, in an action involving registered trademarks, to determine the right to registration and to order the cancellation of registrations. 15 U.S.C. § 1119; *see Zinn v. Seruga*, No. 05-3572, 2006 WL 2135811, at *7 (D.N.J. July 28, 2006). This authority is concurrent with trademark cancellation proceedings before the USPTO. *Zinn*, 2006 WL 2135811, at *7 (citing *Simmonds Aerocessories v. Elastic Stop Nut Corp. of Am.*, 257 F.2d 485, 491 (3d Cir. 1958)). A registered mark may be cancelled at any time if it was obtained fraudulently. 15 U.S.C. § 1064(3); *Marshak v. Treadwell*, 240 F.3d 184, 192-193 (3d Cir. 2001).

Fraudulent procurement occurs when an applicant "knowingly makes false, material representations of fact in connection with an application" with the intent to deceive the USPTO. *Metro Traffic Control, Inc. v. Shadow Network Inc.*, 104 F.3d 336, 340 (Fed. Cir. 1997) (citations omitted); *see Marshak*, 240 F.3d at 196. The party seeking cancellation bears the burden of proving fraud by clear and convincing evidence. *Id.* Fraud in this context involves either misrepresentations or omissions "of material information or facts which, if disclosed to the [USPTO], would have resulted in the disallowance of the registration sought or to be maintained." *La Cena Fine Foods, Ltd. v. Jennifer Fine Foods*, No. 01-5746, 2006 WL 2014503, at *4 (D.N.J. July 18, 2006) (citation omitted). Moreover, allegations of fraud must satisfy the heightened pleading requirements of Rule 9(b). Fed. R. Civ. P. 9(b).

Here, Beaming White alleges that LaRochell falsely represented to the USPTO that it had used the PEARLY mark in commerce as of November 20, 2019, when in fact it had not made any bona fide commercial use of the mark when it filed its trademark applications on May 24, 2020. (Am. Countercls. ¶¶ 13, 15, 21, 33, 35, 37, 50-52, 77-92.) Beaming White does not allege that LaRochell simply misstated a date of first use in its trademark applications—rather, it alleges LaRochell had not made any bona fide use of the mark in commerce at all as of May 24, 2020, when the applications were filed. (*Id.* ¶¶ 33-34, 50-52.) Because use in commerce is a statutory prerequisite to registration under Section 1(a) of the Lanham Act, Beaming White plausibly alleges that LaRochell made material misstatements to the USPTO by representing that such use had occurred when it allegedly had not. 15 U.S.C. § 1051(a); *Couture v. Playdom, Inc.*, 778 F.3d 1379, 1380, 1382 (Fed. Cir. 2015) (affirming cancellation of trademark registration where trademark owner had not rendered services to any customer until "well after the application was filed"); *Tapestry, Inc. v. Chunma USA, Inc.*, No. 20-271, 2021 WL 1534988, at *1 (S.D.N.Y. Apr. 19, 2021).

Beaming White further alleges facts supporting an inference that LaRochell knowingly misrepresented its use in commerce and did so with intent to deceive the USPTO. Specifically, Beaming White alleges that the specimens LaRochell submitted with its applications exhibited indicia of fabrication, including affixed labels rather than integrated packaging, apparent overlaying of the PEARLY mark over other markings, and irregular labeling inconsistent with bona fide commercial packaging. (*See* Am. Countercls. ¶ 18 (alleging "noticeable pealing and texture differences indicating an affixed label rather than genuine packaging"); *id.* (alleging the "wording 'Pearly' appears to be covering other markings, particularly under the 'ear' on the handle of the toothbrush"); *id.* ¶ 20 (alleging the label on the canister "was printed out and affixed to the top" and "appears to not be a perfect circle, as one would expect from a professional labelling

6

machine"). From these alleged discrepancies, Beaming White plausibly alleges that the specimens were staged to create the false appearance of use in commerce when none existed. (*See id.* ¶¶ 16-53.)

At the pleading stage, allegations that an applicant submitted fabricated or contrived specimens in support of a claim of use in commerce, coupled with allegations of non-use at the time of filing, are sufficient to support a claim for cancellation based on fraudulent procurement. *See Smith v. Dir.'s Choice, LLP*, No. 15-81, 2017 WL 2955347, at *7 (D.N.J. July 11, 2017) (denying motion to dismiss cancellation counterclaim where defendant alleged plaintiff made false statements in its trademark application regarding the "date of the first use of the mark" and the "date of first use in commerce"); *Gross v. Guzman*, No. 11-23028, 2012 WL 12863969, at *5 (S.D. Fla. July 5, 2012) (denying motion to dismiss cancellation counterclaim where defendant alleged plaintiff "misrepresented [] the first date of use of the mark in commerce").

Beaming White also satisfies Rule 9(b)'s particularity requirement. *See* Fed. R. Civ. P. 9(b). Beaming White identifies who committed the alleged fraud (LaRochell), what was misrepresented (use of the PEARLY mark in commerce), when and where the misrepresentations were made (in the trademark applications filed with the USPTO on May 24, 2020), and how the fraud was accomplished (by submitting allegedly fabricated specimens and falsely claiming use in commerce). (Am. Countercls. ¶¶ 9, 11, 13, 15-21, 27, 29, 83-86.) Accepting these allegations as true, Beaming White plausibly alleges that LaRochell knowingly made material misrepresentations to the USPTO regarding use in commerce with the intent to deceive. *See Smith*, 2017 WL 2955347, at *7. Beaming White, accordingly, states claims for cancellation of the '120 and '658 Registrations. Counterclaim Defendants' motion to dismiss Counterclaims One and Two is therefore denied.

7

B.  **Tortious Interference with Prospective Economic Advantage (Counterclaim Three)**

Beaming White also alleges that LaRochell tortiously interfered with its prospective business relationships by naming its downstream retailers as defendants in the Amended Complaint. (Am. Countercls. ¶¶ 94-97 (alleging LaRochell "sued the [Retailer D]efendants in this action in an intentional and malicious effort to disrupt Beaming White's relationships").)

To state a claim for tortious interference with prospective economic advantage under New Jersey law, a plaintiff must adequately allege:

> (1) a reasonable expectation of economic advantage from a prospective contractual or economic relationship; (2) the defendant intentionally and maliciously interfered with the relationship; (3) the interference caused the loss of the expected advantage; and (4) actual damages resulted.

*New Skies Satellites, B.V. v. Home2US Communications, Inc.*, 9 F. Supp. 3d 459, 472 (D.N.J. 2014) citations omitted).

As a threshold matter, New Jersey's litigation privilege "ensures that '[s]tatements by attorneys . . . made in the course of judicial or quasi-judicial proceedings are absolutely privileged and immune from liability.'" *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 523 (D.N.J. 2012) (citation omitted); *Baglini v. Lauletta*, 338 N.J. Super. 282, 293-94 (App. Div. 2001) ("The [litigation] privilege promotes the unfettered expression that is critical to the administration of justice. Such freedom would be defeated if participants in the process feared later tort liability."). This immunity has been applied broadly to a wide range of tort claims, and extends to "attorneys, parties, and their representatives." *Baran v. ASRC MSE*, No. 22-4391, 2023 WL 2344634, at *8 (D.N.J. Mar. 3, 2023) (internal citations omitted); *Peterson v. HVM LLC*, No. 14-1137, 2016 WL 845144, at *7 (D.N.J. Mar. 3, 2016) (quoting *Giles*, 901 F. Supp. 2d at 523).

8

Given the broad scope of the litigation privilege, the Court finds persuasive Counterclaim Defendants' argument that LaRochell's naming of the Retailer Defendants in the Amended Complaint is protected conduct and cannot form the basis of a tortious interference claim. *See Simon Prop. Grp., Inc. v. Palombaro*, 682 F. Supp. 2d 508, 512 (W.D. Pa. 2010) (dismissing tortious interference counterclaims based on counterclaim defendant's "initiation and publication of [a] lawsuit" as barred by the judicial and/or financial interest privileges).

Even assuming, however, that the litigation privilege does not apply, Beaming White still fails to adequately plead malice or wrongful conduct as required to sustain a tortious interference claim.[4] *Lamorte Burns & Co., Inc. v. Walters*, 770 A.2d 1158, 1170-71 (N.J. 2001). The filing of a complaint, even if motivated by a competitive purpose, is a lawful use of the judicial process unless it is objectively baseless. *In re Jeep Eagle 17, Inc.*, No. 09-23708, 2010 WL 4864171, at *5 (Bankr. D.N.J. Nov. 23, 2010) (explaining that, while abuse of legal process may constitute tortious conduct under certain circumstances, such a claim requires conduct that is "inflicted intentionally and without justification or excuse"); *Organon Inc. v. Mylan Pharm., Inc.*, 293 F. Supp. 2d 453, 460 (D.N.J. 2003). Here, Beaming White's counterclaim rests entirely on LaRochell's decision to name certain downstream retailers as defendants in the Amended Complaint, yet it alleges no facts

---

[4] The Amended Counterclaims only offer the conclusory statement, "LaRochell intentionally and maliciously sought to interfere with Beaming White's distribution relationships by suing Beaming White's downstream resellers." (Am. Countercls. ¶ 51; *see also id* ¶ 76.) This is insufficient to plausibly allege that LaRochell acted maliciously. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *Onyx Enters. Canada, Inc. v. Royzenshteyn*, No. 23-02913, 2025 WL 62834, at *14 (D.N.J. Jan. 8, 2025) (dismissing tortious interference claim where plaintiff failed to adequately plead malice "[a]part from conclusory statements that [defendants] acted intentionally and without justification or excuse").

suggesting abuse of legal process or that LaRochell lacked a colorable basis for including the Retailer Defendants in this action.[5] (*See* Am. Countercls. ¶¶ 93-116.)

Moreover, Beaming White fails to allege that it lost any specific contract or identifiable prospective economic relationship as a result of LaRochell's conduct. (*Id.* ¶ 96 (alleging only a generalized "reasonable expectation of economic benefit from its reseller and distribution relationships"); *see Engineered Framing Sys., Inc. v. Vescom Structures, Inc.*, No. 05-1461, 2005 WL 8174971, at *4 (D.N.J. Nov. 1, 2005) (dismissing tortious interference claim for failure to plead a specific prospective economic advantage that was lost as a result of the defendant's actions). Because Beaming White's tortious interference counterclaim rests solely on LaRochell's filing of an amended complaint, and fails to identify any prospective economic advantage lost, it must be dismissed as insufficiently pleaded. *See Walters*, 770 A.2d at 1165.[6]

---

[5] To the contrary, as Counterclaim Defendants note, trademark plaintiffs routinely name downstream sellers where contributory infringement or injunctive relief may be implicated. (Countercl. Defs.' Moving Br. 5-6); *see, e.g., Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 854 (1982) (explaining that a manufacturer or distributor can be held contributorily liable for trademark infringement if it "continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement").

[6] With respect to Beaming White's tortious interference counterclaim, Beaming White names Khourshed and Alkamary as individual counterclaim defendants and asks the Court to pierce the corporate veil with respect to these two defendants. (*See* Am. Countercls. ¶ 110 ("The corporate veil should be pierced and Khourshed and Alkamary should be held liable for LaRochell's tortious interference.") Because the Court dismisses the underlying tortious interference counterclaim, Beaming White's request to pierce the corporate veil necessarily fails. The Court, accordingly, will dismiss Khourshed and Alkamary as individual counterclaim defendants from this action.

## IV. CONCLUSION

For the reasons set forth above, Counterclaim Defendants' motion to dismiss is granted in part and denied in part. The Court will issue an Order consistent with this Memorandum Opinion.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

DATED: February 10th, 2026